IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00227-EWN-MEH

JAMES R. DUCOIN,

    Petitioner,
v.

STAVE HARTLEY, Warden, Limon Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

## RECOMMENDATION FOR DISMISSAL

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket #3]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R 72.1.C, this matter has been referred to this Court for recommendation. For the reasons set forth below, the Court recommends that the Application be **denied**.

**I.    Facts**

In 1991, Petitioner James Ducoin was charged with first degree after-deliberation murder, felony murder, aggravated robbery, first degree burglary, second degree burglary, and five crime of violence counts for the slaying of Kathryn Simpson in 1979. Ms. Simpson was found by her grandson lying on her bed with several puncture wounds in her chest. Police also found a yardstick and two large paper clips. Witnesses stated that Ms. Simpson kept a significant sum of cash under her dresser in a First National bank envelope.

At the time of her death, Ducoin was living next door with his parents after his release from prison for sexual assault less than two weeks before. He was working as a janitor, and friends stated

that he had no money upon his release from prison. Ducoin did not go to work the day of the murder. One witness, John Tracey, stated that he brought Ducoin a bottle of tequila on the day of the murder, as Ducoin had requested. Ducoin's parents were on vacation on the day of the murder, and when they returned home six days later, Ducoin had left. When officers later searched the trash behind Ducoin's parents' house, they found Ducoin's personal items including his probation report, along with a partially burned First National Bank envelope and a large paperclip matching the two found in the victim's bedroom. Witnesses placed Ducoin at a nearby hotel, where he had stayed under a false name, and a woman from an escort service hired by Ducoin shortly after the murder stated that Ducoin had paid her from a large roll of cash. Ducoin left Colorado and remained a fugitive until his arrest in New Orleans, Louisiana in 1991.

After his return to Colorado and charges were filed, Ducoin pleaded guilty to felony murder. For the factual basis of his plea, Ducoin stated, "I entered this house to burglarize it and that lady showed me where she kept her valuables and she started screaming because I was getting the valuables. I panicked and stabbed her." Response at 7 (citing Record v3, pp. 20-21). He was sentenced to life in prison without parole eligibility for twenty years.

Ducoin filed his Rule 35(c) motion for postconviction relief in 1992, alleging ineffective assistance of counsel. Ducoin's motion was based on the facts surrounding his arrest and confession while detained in Louisiana. Ducoin argued that his counsel should have inquired into these circumstances and filed motions to suppress. The state trial court held an evidentiary hearing and denied this motion, but the Colorado Court of Appeals remanded for the trial court to determine whether there was an unreasonable delay before Ducoin was brought to court after his arrest, whether the failure to file a motion to suppress constituted ineffective assistance of counsel, and whether

2

counsel provided incorrect advice regarding his potential sentence if he did not plead guilty. On remand, the trial court held a second evidentiary hearing and concluded that counsel did discuss the circumstances of Ducoin's arrest with him, as well as any possible motions, but that Ducoin had insisted that he wanted the best plea possible and to get this over with.

On appeal, the Colorado Court of Appeals affirmed, and the Colorado Supreme Court denied Petitioner's Writ of Certiorari. Petitioner timely filed the instant Writ of Habeas. Petitioner presents one claim for relief, ineffective assistance of counsel, based on two grounds: (1) counsel failed to investigate and challenge his arrest and confession; and (2) counsel failed to seek dismissal of the robbery and burglary counts that were barred by the statute of limitations. Petitioner describes these as failure to investigate, failure to know the law, and erroneous and misleading advice. Application at 5.

## II. Discussion

### A. Standard of Review

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (citations omitted). Before filing a federal habeas application, a state prisoner must first exhaust his state remedies by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v.*

3

*Boerckel*, 526 U.S. 838, 845 (1999). Based on the denial of certiorari review by the Colorado Supreme Court in Petitioner's case, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals, which represents the final substantive proceedings in the state appellate review process.

This case is also governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred. *Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999). Under AEDPA, a Petitioner is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

> As the Supreme Court recently stated:
>
> A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (internal citations omitted).

The state court need not cite to Supreme Court cases in reaching its decision, provided that "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Accordingly, when a state court adjudicates a federal issue relying solely on

a state standard that is at least as favorable to the Petitioner as the federal standard, this Court may presume an adjudication on the merits and apply AEDPA deference. *Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* must be applied. *Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002). Under *Brecht,* habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623.

Finally, factual findings made by the state trial and appellate courts are presumed correct, with the Petitioner bearing the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003). The burden remains, because "whether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

**B.     Timeliness of the Application and Exhaustion**

As acknowledged by Respondents, and reviewed by the Court, Petitioner filed his application within the one-year time limit prescribed by AEDPA. 28 U.S.C. § 2244(d). His claim for ineffective assistance of counsel, including the grounds relied upon in his application, were adequately presented to the state court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999). His claim is, therefore, exhausted, as required by 28 U.S.C. § 2254(b) and (c).

5

## C. Petitioner's Claims of Ineffective Assistance of Counsel

To support a claim of ineffective assistance of counsel, Petitioner must show that (1) his counsel's performance fell below an objective standard of reasonableness; and (2) prejudice to the petitioner, such that but for the error's of counsel, the result would have been different. *Strickland v. Washington*, 466 U.S. 688, 692-93 (1984). In the context of a plea agreement, the plea is valid if it is knowing and voluntary, "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Prejudice to the petitioner is established by showing a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

### 1. Failure to Investigate

The circumstances surrounding Petitioner's arrest and confession are as follows: Petitioner was arrested on Friday, March 8, 1991, by federal agents. He was interrogated the next morning, Saturday morning, at the FBI's office in New Orleans by Detective Steve Wood of the Colorado Springs Police Department ("CSPD"). Petitioner was advised of his *Miranda* rights, and he signed a waiver of these rights. Detective Wood informed Petitioner that he was interviewing him about the murder of Ms. Simpson, and that Petitioner could stop the interview at any time. Petitioner confessed to the murder of Ms. Simpson during this interview and stated that he had been hiding from authorities since 1979 and using a false name and social security number. Petitioner first appeared in federal court on Monday for a probation violation warrant and appeared in state court on Tuesday for the murder charge.

Petitioner's plea counsel, James Moss, testified at the Rule 35(c) evidentiary hearing that he discussed the circumstances surrounding Petitioner's arrest and interrogation during their first

interview, and that Petitioner stated that the confession was basically true. Moss testified that he researched the witnesses in the case and found out that the state's witnesses were still available to testify. Moss further stated that Petitioner informed him that he wanted to get the best deal and to get the case over with. Moss stated that Petitioner even waived the preliminary hearing, because he wanted to dispose of the case and serve his time to get it over with. Through investigation, Petitioner's counsel learned that the warrant for probation violation had been cancelled, and the probation case had been dismissed. Moss also testified that he investigated the death penalty, consecutive sentences, and habitual sentencing. Moss discovered prior to Petitioner pleading guilty that the federal probation warrant had been canceled, but the murder warrant was active at the time of the arrest. Moss testified that he brought this to Petitioner's attention, and Petitioner stated that he just wanted to get the case over with as soon as possible.

Jorge Sierra, Petitioner's co-counsel, also informed Petitioner that the probation case had been dismissed. Both counsel informed Petitioner that there were possible motions to file regarding the arrest, but Sierra testified that Petitioner was only concerned with not receiving a consecutive sentence and wanted to plea bargain if he could avoid consecutive sentences.

During the plea discussions, the prosecution threatened to file habitual charges if he did not plead guilty to murder. Petitioner further stated that his counsel told him he could get at least 50 years before parole eligibility, instead of 20, if he proceeded to trial. In pleading guilty, Petitioner provided the following factual basis: "I entered this house to burglarize it and that lady showed me where she kept her valuables and she started screaming because I was getting the valuables. I panicked and stabbed her." Response at 7 (citing Record v3, pp. 20-21).

During the Rule 35(c) hearing, Earl Aldrich of the CSPD fugitive unit testified that he knew

of the outstanding federal warrant while he was looking for Petitioner. CSPD learned in 1989 that the warranted was to be cancelled, and Detective Smit prepared an affidavit to support a murder warrant, which was signed on February 9, 1989. When the FBI learned of Petitioner's whereabouts on March 7, 1991, they informed CSPD and confirmed that the murder warrant was active. The FBI then sought a federal warrant on the murder charges so that Petitioner could be extradited. Assistant U.S. Attorney Thomas O'Rourke authorized the filing of the federal warrant shortly before 5:00 p.m. on Friday, March 8, 1991. O'Rourke was informed by the U.S. District Court that it was too late to file the Complaint that day, and FBI Agent Sullivan stated that there was no on-call federal judge to whom to present the warrant until Monday. Because Petitioner had been a fugitive since 1979, O'Rourke orally authorized the arrest and directed Agent Sullivan to file the federal complaint and warrant on Monday and have it faxed to New Orleans. Agent Sullivan directed FBI agents in New Orleans to arrest Petitioner if they could find him before Monday based on the state murder charge. Petitioner was arrested that night, and Magistrate Judge Richard Borchers signed the warrant approximately 10:05 a.m. on Monday morning. Petitioner appeared in federal court in New Orleans on Monday afternoon and was informed he was being held on a federal warrant based on the probation case.

Petitioner contends that his counsel's failure to investigate these facts and seek suppression of his confession constitutes ineffective assistance of counsel. In considering Petitioner's claims, the Colorado Court of Appeals ("CCA") noted that federal agents may arrest an individual without a warrant for the felony of crossing state lines to avoid prosecution if they have reasonable grounds to believe that person has committed or is committing a felony. The CCA found that Petitioner should have been brought before a judge for a determination of probable cause within 48 hours, in the

absence of extraordinary circumstances, and that the weekend did not on its own constitute extraordinary circumstances. The CCA further determined that this violation did not require suppression of the confession absent a showing of prejudice. The CCA concluded that Petitioner confessed to the murder within nineteen hours of his arrest and promptly sought to obtain a guilty plea. The CCA reasoned that it was not unreasonable for his counsel to follow his instructions, that it was not likely his counsel would have determined with further investigation the arrest was illegal, or that suppression was so likely that his counsel could have dissuaded him from pleading guilty.

Counsel to one who pleaded guilty has a duty to make reasonable investigations. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Such deference requires Petitioner to "prove serious derelictions on the part of counsel sufficient to show that his pleas was not, after all, a knowing and intelligent act." *McMann v. Richardson*, 397 U.S. 759, 774 (1970). Here, Petitioner claims that investigation by counsel would have revealed that his arrest was not based on a proper warrant, and that he was not brought before the court within a reasonable period of time, which should have resulted in the suppression of his confession. In this Application, Petitioner must establish that motions to suppress based on these arguments would have been successful and that there is a reasonable probability that he would have insisted on going to trial once the evidence was suppressed. *Kimmelman v. Morrison*, 477 U.S. 365 (1986).

Regarding his arrest, Petitioner argues that there was no valid warrant when he was arrested, which is true. The federal probation warrant had been cancelled, and the warrant for unlawful flight to avoid prosecution was not issued until the Monday after Petitioner's arrest. Nevertheless, the FBI

9

may arrest an individual without a warrant if the agent has reasonable grounds to believe that the individual has committed or is committing a felony. 18 U.S.C. § 3052. In this case, Agent Tamashiro had reviewed the affidavit in support of the murder warrant, which provided the following information: that Petitioner was a suspect in the murder of Ms. Simpson; that Petitioner was staying with his parents next door to Ms. Simpson at the time of the murder; that, at that time, Petitioner was recently released from prison; that Petitioner used a false name at a motel days after the murder; and that Petitioner left the state at that point and had not since been located. In addition, United States Magistrate Judge Richard Borchers found probable cause and signed the arrest warrant on the following Monday, based on the same information available to Agent Tamashiro. The state district court concluded, based on these circumstances, that Agent Tamashiro had probable cause to believe that Petitioner fled Colorado to avoid facing murder charges, which is a felony. Response, Exh. J at 3.

Petitioner also argues that the delay in presenting him to the court would have resulted in the suppression of his confession. A delay in presentment beyond 48 hours is unreasonable, unless the government can set forth emergency or extraordinary circumstances. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). An intervening weekend does not, by itself, constitute an extraordinary circumstance. *Id.* While Respondents acknowledge that Petitioner was not presented to the court until 64 ½ hours after his arrest, Respondents argue that no prejudice existed. Respondents point out that Petitioner was arrested late Friday night, and the interrogation began the next morning. Petitioner confessed to the murder of Ms. Simpson after eight hours of interrogation and approximately 20 hours after his arrest. The state trial court determined that delay in presentment did not contribute to Petitioner's confession.

10

In addressing Petitioner's claims, the CCA gave significant weight to the trial court's findings and concluded that no prejudice existed. The Court of Appeals reasoned:

> Defendant has failed to show that, had his counsel investigated further, they would have concluded that the arrest or failure to present him to a magistrate was illegal, and that the suppression of his confession was so likely that they would have dissuaded him from pursuing a plea bargain. He has also failed to show that, had they advised him not to pursue a plea bargain, he would have pled [not] guilty and taken the risk of trial, conviction, and sentencing. To the extent that he argues he could have obtained a better plea bargain, such speculation does not constitute a showing of prejudice.

Response, Exh. J at 10. Petitioner was arrested at 10:00 p.m. on a Friday night and could not be brought before a United States Magistrate Judge until the following Monday, and he was. Though Petitioner argues that he should have been presented to a state magistrate over the weekend, Petitioner confessed to the murder well within the 48-hour constitutional window. Viewing counsel's representation in light of Petitioner's statements that he "wanted to get it over with" and wanted the best deal possible, including the fact that Petitioner admits counsel informed him that motions to suppress could be filed, the CCA concluded that Petitioner had failed to establish that his guilty plea was not knowing and voluntary based on ineffective assistance of counsel. *Id.* at 9-10.

This Court agrees. Plea counsel's failure to file a motion to suppress the confession did not prejudice Petitioner, because Petitioner has not established that his confession within the 48-hour window would be suppressed or that he would have insisted on going to trial, in light of his decision to waive the preliminary hearing and his statements that he just wanted to get it over with and get the best plea possible. Moreover, there is ample evidence of probable cause to conclude that a challenge to Petitioner's arrest is not meritorious. Accordingly, the decision of the CCA was neither contrary to nor an unreasonable application of the law, as determined by the Supreme Court; nor was it based

11

on an unreasonable determination of the facts in light of the evidence presented. Federal habeas relief on this claim is, therefore, appropriately denied.

Petitioner further argues that he should have been brought before a United States Magistrate Judge within six hours on the federal warrant. Traverse at 14 (citing 18 U.S.C. § 3501). Though Petitioner did not present this argument to the state court, he has consistently challenged the delay in presentment. Assuming, without deciding, that this claim is exhausted, this statute applies solely to criminal prosecutions brought by the United States or by the District of Columbia and does not relate to the constitutional requirements for presentment. Thus, Petitioner's counsel could not have succeeded in any argument based on this statute, and Petitioner's request for federal habeas relief on this ground is properly denied.

### 2. Failure to seek dismissal of two counts

Petitioner contends that his counsel were not aware that the burglary and robbery counts were barred by the statute of limitations and, therefore, advised him that he could be subject to habitual criminal counts. On this basis, counsel advised him that the sentence in the plea bargain was optimal. As to this claim, the CCA determined that Petitioner did not argue that he would have rejected the plea bargain and proceeded to trial. Response, Exh. J at 11. The CCA concluded that Petitioner had only argued that he may have received a lesser sentence in the plea bargain. The CCA further concluded that the prosecution's dismissal of these counts and reduction of the first-degree murder charge to a felony murder charge for the plea agreement demonstrated that the possibility of a better plea agreement was speculative. *Id.* at 12. The CCA found, therefore, that Petitioner failed to show any prejudice resulted from his counsel's failure to seek dismissal of the burglary and robbery counts.

To succeed on this claim, Petitioner again must establish a reasonable probability that he

would have proceeded to trial, which he does not argue. *Hill*, 474 U.S. at 56. In addition, "a plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal." *Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005). "And in evaluating the validity of [petitioner's] plea, we are reluctant to accord much weight to his *post hoc* reevaluation of the wisdom of the bargain." *Id.* Once again, when viewed in light of Petitioner's insistence that he get the best deal possible as quickly as possible, the CCA's decision was neither contrary to nor an unreasonable application of the law, as determined by the Supreme Court; nor was it based on an unreasonable determination of the facts in light of the evidence presented. Federal habeas relief is not appropriate on this claim.

**III. Conclusion**

In viewing the merits of the Petitioner's claims, he is not entitled to relief under 28 U.S.C. § 2254. Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required. Accordingly, for the reasons stated above, the Court RECOMMENDS that the Application for a Writ of Habeas Pursuant to 28 U.S.C. § 2254 [Filed January 22, 2007; Docket #3] be **denied**, and that this case be dismissed with prejudice. Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[1]

---

[1] The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.

Dated at Denver, Colorado this 15th day of February, 2008.

BY THE COURT:


s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

*Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).